**SHELCORE, INC.,**
Appellant/Cross-Appellee,

v.

**DURHAM INDUSTRIES, INC.,**
Appellee/Cross-Appellant.

**Appeal Nos. 84–791 and 84–824.**

United States Court of Appeals,
Federal Circuit.

Sept. 28, 1984.

---

Peter T. Cobrin, New York City, for appellant.

James M. Rhodes, Jr., New York City, argued for appellee. With him on the brief were Michael Ebert and William L. Botjer, New York City.

Before MARKEY, Chief Judge, BALDWIN and EDWARD S. SMITH, Circuit Judges.

EDWARD S. SMITH, Circuit Judge.

In this patent infringement case, appellant/cross-appellee Shelcore, Inc. (Shelcore), appeals from a judgment of the U.S. District Court for the Eastern District of Pennsylvania, holding invalid claims 1–12 of Strauss, U.S. patent No. 4,208,831 (the '831 utility patent) and finding the claim of Strauss, U.S. Des. patent No. 257,-780 (the '780 design patent) to be not infringed. We affirm.

*Background*

Shelcore is the assignee of the '831 utility and '780 design patents in suit. Both related to a driving simulator toy. The child's legs fit in a "tunnel" under the toy to provide a more realistic driving environment and, thus, maintain the child's interest. Appellee/cross-appellant Durham Industries, Inc. (Durham), manufactures a competing driving simulator toy called "Buckle Up 'N Drive." The "dashboard" surface is supported by legs in the Durham device, rather than by a "tunnel" structure, as in the patented Shelcore toy.

On October 1, 1982, Shelcore sued Durham in the U.S. District Court for the Eastern District of Pennsylvania for infringement of claims 1–13 of the '831 utility patent and of the '780 design patent. Durham answered with affirmative defenses of invalidity, unenforceability, and non-infringement. Durham also counterclaimed for a declaratory judgment of invalidity of both patents and for unfair competition. The case was tried before Judge Broderick, sitting without a jury. During trial, Shelcore's claim of infringement of claim 13 was dismissed with prejudice.

Judge Broderick, in an opinion dated January 6, 1984, held claims 1–12 of the '831 utility patent invalid under 35 U.S.C. § 103 (1982) and found that, if valid, those claims would be infringed by Durham's "Buckle Up 'N Drive" toy. The district court also held that the '780 design patent, while not invalid, was not infringed by Durham's "Buckle Up 'N Drive" toy. Shelcore contends that the trial court erred in holding claims 1–12 of the '831 utility patent invalid and that the trial court's failure to find infringement of the '780 design patent is clearly erroneous. Durham, the prevailing party, argues in its cross-appeal that the trial court's finding, that, if valid, claims 1–12 of the '831 utility patent would be infringed, is clearly erroneous and that the trial court erred in failing to hold the '780 design patent invalid.[1]

*Issues*

Four questions are presented in this appeal:

---

1. *Radio Steel & Mfg. Co. v. MTD Prods., Inc.,* 731 F.2d 840, 221 USPQ 657 (Fed. Cir.1984) (where judgment on validity is distinct from judgment on infringement, prevailing party on liability seeking to challenge ruling on either validity or infringement on appeal must file a cross-appeal). Although not bound by the prospective effect of the court's ruling in *Radio Steel,* Durham properly filed a cross-appeal in this case.

(1) whether claims 1–13 of the '831 utility patent are invalid for obviousness under 35 U.S.C. § 103;

(2) whether the '780 design patent is invalid for double patenting;

(3) whether the '780 design patent is infringed by Durham's "Buckle Up 'N Drive" device; and

(4) whether Shelcore committed unfair competition in securing an ex parte, permanent injunction against Durham at a time when the '831 patent was allegedly unenforceable.

### Claims in Suit

■ Durham asserts that *all* of the claims of the '831 utility patent are invalid under section 103. We disagree. The district court held only claims 1–12 invalid. By voluntarily dismissing with prejudice claim 13 of the '831 utility patent, Shelcore removed the issue of infringement of claim 13 from the trial court's consideration.[2] But Shelcore could not unilaterally remove the validity issue because Durham's counterclaim put validity of all the claims in issue.[3] Nevertheless, Durham's counterclaim for a declaration of invalidity as to claim 13 is not supported by the record and therefore we conclude that the trial court did not err by holding invalid only claims 1–12.

### Presumption of Validity

■ The district court held that, since Shelcore "has not argued the patentability of the dependent claims [2–12] separately from the independent claim [1], the dependent claims stand or fall with the independent claim. *In re Mlot-Fijalkowski*, 676 F.2d 666, 667 n. 4 [213 USPQ 713, 714 n. 4] (C.C.P.A.1982)." The district court erred as a matter of law in applying that otherwise valid rule in the context of determining validity of the claims of an issued patent. It was not Shelcore's burden to argue patentability. The claims were presumptively valid. It was Durham's burden, not only to argue, but to submit evidence establishing the invalidity of each claim it asserted to be invalid.

Rather, the above rule of procedure is applicable to claims pending before, or on appeal from, the Patent and Trademark Office (PTO), where those claims have not yet issued in a patent and where the applicant bears the burden of overcoming the rejection of each claim. Once claims 1–12 issued in the '831 patent, however, the situation is covered by 35 U.S.C. § 282 (1982) which provides in relevant part that

> [e]ach claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim. * * *

The rule applied by the trial court flies in the face of the presumption of validity. While the rule—that where the patentability of dependent claims is not argued separately from the independent claims from which they depend, the former stand or fall with the latter—has vitality prior to the issuance of a patent embodying those claims,[4] that rule has no application in a district court proceeding to determine whether the claims of an issued patent are valid.

■ While the above rule is not applicable as a rule of procedure in a district court, it has been applied on appeal from a district court judgment with respect to the claims of an issued patent as a matter of convenience.[5] The presumption of validity

2. *See Stearns v. Beckman Instruments, Inc.*, 737 F.2d 1565 at 1567 (Fed.Cir.1984).

3. *Altvater v. Freeman*, 319 U.S. 359, 363, 63 S.Ct. 1115, 1117, 87 L.Ed. 1450, 57 USPQ 285, 288 (1943).

4. *Id.; In re Burckel*, 592 F.2d 1175, 201 USPQ 67 (CCPA 1979); *In re Bayer*, 568 F.2d 1357, 196 USPQ 670 (CCPA 1978).

5. *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 898, 221 USPQ 669, 677 (Fed.Cir. 1984); *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 960, 220 USPQ 592, 599 (Fed.Cir.1983), *petition for cert. filed*, 53 U.S.L.W. 3009 (U.S. May 30, 1984) (No. 83–2128); *Gardner v. TEC Sys., Inc.*, 725 F.2d 1338, 1350, 220 USPQ 777, 786 (Fed.Cir.1984) (en banc); *Stratoflex, Inc. v.*

does not guide our analysis on appeal. Rather, we review the findings and conclusions of a district court under the appropriate standards of review. That circumstance bears no relation, however, to the requirement at trial that a party challenging the validity of a claim, absent a pretrial agreement or stipulation, must submit evidence supporting a conclusion of invalidity of *each* claim the challenger seeks to destroy.

### Validity of '831 Utility Patent Under Section 103

The trial court relied primarily on three prior art references in holding invalid claims 1–12 of the '831 utility patent: Kamlay, U.S. patent No. 4,143,915; Wells, U.S. patent No. 2,429,498; and Stubbmann, U.S. patent No. 3,659,375. Shelcore contends that the Kamlay and Wells patents are nonanalogous art and, therefore, the trial court erred in combining those references with the Stubbmann patent in determining whether the subject matter of the '831 utility patent would have been obvious to one of ordinary skill in the art. Shelcore also argues that the trial court improperly relied on the testimony of Durham's allegedly unqualified expert witness, Mr. Margolies. Further, Shelcore argues that the trial court erred in applying the *Graham v. John Deere Co.*[6] criteria and that, since the trial court analyzed only claim 1 and failed to consider separately claims 2–12, it erred in holding claims 2–12 invalid. We conclude that these contentions do not require reversal of the district court's judgment.

*Nonanalogous Art.*

■ The Kamlay patent discloses a "Table for a Child Safety Seat," having a flat padded play surface and legs to support the table over the child's legs. The inven-

tion is used primarily in cooperation with a child's automobile safety seat. Wells discloses a similar appliance for use in an adult chair to provide a flat play surface. Even were we to adopt Shelcore's argument, that these references are not within the field of the inventor's endeavor, which we do not, the problem presented and overcome by the invention is basically the same: to permit the child to position his or her body in the same general orientation relative to the play surface or toy with his or her legs extending under the toy. Thus, the solutions disclosed in Kamlay and Wells are "reasonably pertinent to the particular problem with which the inventor was involved."[7]

*Expert Testimony.*

■ With respect to the testimony of Mr. Margolies, Shelcore has not established that the trial court abused its discretion in allowing the testimony into evidence. While Mr. Margolies was not a toy designer, the trial judge was satisfied that he was qualified as an expert in plastics manufacturing and that his testimony was relevant and material. We are aware of no evidence of record to the contrary. Further, we cannot agree with Shelcore that the trial court placed undue reliance on Mr. Margolies' testimony. Rather, the court below in its opinion appears to base its conclusion of invalidity squarely on the three prior art references mentioned above. No mention is made by the trial court of Mr. Margolies' testimony in its opinion.

*Obviousness.*

■ Shelcore alleges that the district court committed error with respect to each of the *Graham* factual criteria: scope and content of the prior art, differences between the prior art and the claimed subject

---

*Aeroquip Corp.,* 713 F.2d 1530, 1536, 218 USPQ 871, 877 (Fed.Cir.1983).

6. *Graham v. John Deere Co.,* 383 U.S. 1, 17–18, 86 S.Ct. 684, 693–694, 15 L.Ed.2d 545, 148 USPQ 459, 467 (1966).

7. *In re Pagliaro,* 657 F.2d 1219, 1224, 210 USPQ 888, 892 (CCPA 1981) (quoting *In re Wood,* 599

F.2d 1032, 1036, 202 USPQ 171, 174 (CCPA 1979)). *See also Lindemann Maschinenfabrik GMBH v. American Hoist & Derrick Co.,* 730 F.2d 1452, 1460, 221 USPQ 481, 487 (Fed.Cir. 1984); *Stratoflex,* 713 F.2d at 1535, 218 USPQ at 876.

matter, and level of ordinary skill in the art. We review the factual findings of a district court to determine whether they are clearly erroneous, not merely whether the district court erred.[8]

Claim 1 is set forth below:

A driving simulator toy comprising:

(a) a driving console having

(i) a base for supporting the console on a generally horizontal support surface,

(ii) a top dashboard-like panel juxtaposed above the base and having a front, a rear, and a pair of side edge portions,

(iii) a pair of side panels each extending upwardly from and connecting the base to the respective side edge portions of the top panel,

(iv) a front end panel extending upwardly from and connecting the base to the front edge portion of the top panel,

(v) a rear end panel extending upwardly from and connecting the base to the rear edge portion of the top panel, and

(vi) all of said side and end panels maintaining said top panel at an elevated position above the support surface;

(b) a plurality of amusement-type driving control devices mounted on the console within easy reach of a child seated at the same on the support surface, one of the driving control devices constituting a toy steering wheel mounted on the top dashboard-like panel; and

(c) bucket seat environment simulator means on the console for permitting a child to operate all of the driving control devices while being seated at the console with legs outstretched so as to simulate the driving environment of an automobile, particularly a sports car, said bucket seat environment simulator means including

(i) means at the rear of the console for defining a rear cutout which extends forwardly along a central portion of the top panel for a distance sufficient to accomodate [sic] the lower torso of the seated child, at least one of said control devices being mounted on said top panel laterally of said rear cutout and rearwardly of said top panel central portion, said rear cutout also extending upwardly along a central portion of the rear panel for a distance sufficient to accomodate [sic] the upper thigh region of the seated child,

(ii) means at the front of the console for defining a front cutout which extends upwardly along a central portion of the front panel for a distance sufficient to accomodate [sic] the legs of the seated child, and

(iii) said front and rear cutouts being aligned with one another and together forming a tunnel-like structure which accomodates [sic] the outstretched legs of the seated child to thereby simulate the bucket seat environment of a sports car.

We have already resolved against Shelcore the issue whether Kamlay and Wells were properly considered to be pertinent prior art. Further, the "bucket seat environment simulator" limitation of claim 1 presents only minor differences between the subject matter of the claimed invention and the prior art. That limitation, (c) of the above claim, defines a "tunnel" under the toy. We are in agreement with the district court's finding that, while the "wrap around" and "sit under" features of the claimed invention are not present in the prior art driving simulators, they are present in the Kamlay and Wells references. The claimed "tunnel" is similar in structure and substantially similar in function to the legs of both Kamlay and Wells. Finally, Shelcore has failed to establish that the trial court's finding of the level of ordinary skill in the art—a person with a college or art school background and several years' experience designing toys—is clearly erroneous. The trial court properly determined obviousness against the level of ordinary skill in the art. We cannot agree with Shelcore that the evidence was insufficient in this respect.

8. Fed.R.Civ.P. 52(a).

The trial court also considered "secondary" considerations. It found, however, that Shelcore had failed to establish either the requisite nexus between the commercial success of the patented device and the merits of the claimed invention or that the commercially successful device fulfilled a long-felt need. The trial court also found that Shelcore had not established that the alleged deficiencies of the prior art simulators, in particular Stubbmann, gave rise to long-felt but unresolved needs. Rather, the evidence establishes that, as found by the trial court, Shelcore's sales were proportional to its advertising efforts. Shelcore has not established that the findings with respect to secondary considerations are clearly erroneous.

■ Shelcore argues the holding of the U.S. District Court for the District of New Jersey in *Shelcore, Inc. v. CBS, Inc.*,[9] in the absence of persuasive new evidence, required the court below to hold the '831 patent "valid" under the doctrine of stare decisis. We cannot agree. The presumption of validity is a clear statutory procedural device. It is not augmented by an earlier adjudication of patent "validity." A

patent is not held valid for all purposes but, rather, not invalid on the record before the court.[10]

■ We reject this line of reasoning urged by Shelcore. Even were the record in this case substantially identical to the record in the *CBS* case, the doctrine of stare decisis would be inappropriate in this case. The *CBS* jury verdict of validity had not yet matured into a final judgment of validity; nor did it ever so mature. We conclude that the district court did not err in declining to consider the *CBS* jury verdict binding on it, even though that verdict was based on the same art held below to invalidate the '831 utility patent.

We also reject Shelcore's argument that the district court's error, in failing to set out in its memorandum of opinion its analysis of claims 2–12, requires reversal. We are aware of no evidence of record supporting Shelcore's assumption that the district court was unaware that claims 2–12 recite only features common to driving simulator toys[11] or details of construction. The differences between the subject matter of claims 2–12 and the prior art, asserted by Shelcore, do not adequately distinguish the

**9.** *Shelcore, Inc. v. CBS, Inc.*, 220 USPQ 459 (D.N. J.1983) (denying motion for j.n.o.v. on jury verdict that the '831 utility patent is not invalid but granting the motion for new trial on other grounds).

**10.** In *Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705, 711, 218 USPQ 969, 974 (Fed.Cir.1983), the court stated:

"Furthermore, we note that the doctrine of stare decisis is generally an inappropriate one in patent litigation. As stated earlier, patents cannot be held 'valid' under all circumstances. Rather, a court merely decides in a particular case that the one attacking validity has not overcome the statutory presumption of validity. Thus, even if our function here were to determine the 'validity' or invalidity of Stevenson's patent (which we do not believe it is), we would not necessarily be bound by the CCPA's prior decision in *Stevenson v. International Trade Commission* [612 F.2d 546, 67 CCPA 109, 204 USPQ 276 (1979) ]. To be sure, a prior holding of 'validity' should be given weight in a subsequent suit on the issue of 'validity.' But the prior holding does not necessarily have stare decisis effect.[5] * * *

"5. The weight given a prior holding of 'validity' will vary depending on the additional prior

art or other evidence on patentability that is produced in the subsequent suit. *See* 4 D. Chisum, Patents § 19.02[2][e], at 19–33 to 34 & n. 34 (1982). If, however, the record in the second suit is substantively identical to the record produced in the first suit, then it is extremely likely that the court will give its prior holding stare decisis effect. *See American Photocopy Equipment Co. v. Rovico, Inc.*, 384 F.2d 813, 815–16, 155 USPQ 119, 120 (7th Cir.1967), *cert. denied*, 390 U.S. 945, 88 S.Ct. 1030, 19 L.Ed.2d 1133 (1968) (infringer has burden of demonstrating that there is a material distinction between his case and the prior case holding the patent 'valid')."

*See also Environmental Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 699 n. 9, 218 USPQ 865, 871 n. 9 (Fed.Cir.1983), *cert. denied*, 464 U.S. ——, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984).

**11.** *See* Orenstein, U.S. patent No. 3,120,716, issued Feb. 11, 1964, for "Simulated Automobile Dashboard and Control Means"; Stubbmann, U.S. patent No. 3,659,375, issued May 2, 1972, for "Toy with Pseudo Automobile Controls and Pseudo Automobile Windshield and Windshield Wiper Mechanism."

claimed invention from the prior art relied on by the trial court in holding claim 1 invalid. Thus, the district court did not err in concluding that the invention claimed in claims 1–12 of the '831 utility patent "would have been obvious to a toy designer of ordinary skill at the time it was made, in light of the teachings of the relevant prior art."

### Infringement of Claims 1–12 of the '831 Utility Patent

In view of our disposition of the validity issue, we need not, and do not, reach the issue raised by Durham's cross-appeal whether the trial court's finding of infringement of the asserted claims of the '831 utility patent is clearly erroneous. The district court properly resolved both the issues of validity and infringement. However, the issue of infringement is now moot.[12] Durham can incur no liability for "infringement" of invalid claims.[13]

### Validity of '780 Design Patent

■ Durham also cross-appeals from the trial court's conclusion that the '780 design patent is not invalid for double patenting. As we noted in *Carman Industries, Inc. v. Wahl,*[14] and as the Court of Customs and Patent Appeals noted in *In re Thorington,*[15] there are two types of double patenting: same invention-type and obviousness-type.

The '780 design patent issued after the '831 utility patent. Shelcore filed with the PTO a terminal disclaimer with respect to the '780 design patent. Durham concedes that the terminal disclaimer eliminates any obviousness-type double patenting problem. Rather, Durham contends that the trial court erred in failing to conclude that the '780 design patent is invalid for same invention-type double patenting.

■ We hold that the trial court did not err in applying the "cross-reading" test of same invention-type double patenting. While a device made according to the '780 design patent may well infringe the '831 utility patent, the trial court recognized that "no specific design is implied or necessitated by [the '831 utility patent] claims." A device could readily be constructed that would infringe the claims of the '831 utility patent but not the claim of the '780 design patent. The trial court's finding, that a device made in accordance with the '831 utility patent would not necessarily infringe the '780 design patent, is not clearly erroneous. The claims do not cross-read. Thus, on the basis of the record before us, the '780 design patent is not invalid for double patenting.

### Infringement of '780 Design Patent

■ Shelcore argues that the trial court's failure to find the '780 design patent infringed by Durham is clearly erroneous. We disagree. The district court applied the standard for infringement of a design patent set out in *Gorham Manufacturing Co. v. White:*[16]

if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially

---

**12.** *Stratoflex,* 713 F.2d at 1540–41, 218 USPQ at 880–81.

**13.** *Compare Richdel, Inc. v. Sunspool Corp.,* 714 F.2d 1573, 1580, 219 USPQ 8, 12 (Fed.Cir.1983) ("[t]he claim being invalid there is nothing to be infringed") *with Medtronic, Inc. v. Cardiac Pacemakers, Inc.,* 721 F.2d 1563, 1582–83, 220 USPQ 97, 111 (Fed.Cir.1983) (although an invalid claim cannot give rise to liability for infringement, the issue of infringement is capable of determination without regard to validity).

**14.** *Carman Indus., Inc. v. Wahl,* 724 F.2d 932, 940, 220 USPQ 481, 487 (Fed.Cir.1983).

**15.** *In re Thorington,* 418 F.2d 528, 57 CCPA 759, 163 USPQ 644 (1969), *cert. denied,* 397 U.S.

1038, 90 S.Ct. 1356, 25 L.Ed.2d 649, 165 USPQ 290 (1970).

**16.** *Gorham Mfg. Co. v. White,* 81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 (1871). *Litton Syss., Inc. v. Whirlpool Corp.,* 728 F.2d 1423, 1444, 221 USPQ 97, 109 (Fed.Cir.1984), supplements the above test with the requirement that "the accused device must appropriate the novelty in the patented device which distinguishes it from the prior art." Although the district court did not apply this second standard, clearly the result would be the same if it had, the two requirements being conjunctive.

the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

We conclude that the district court did not commit clear error either in finding differences between the two designs or in failing to find that the two designs are substantially similar in overall appearance. The differences found by the trial court are fully supported by the record. Thus, we conclude that the trial court's finding, that the '780 design patent is not infringed by Durham's "Buckle Up 'N Drive" device, is not clearly erroneous.

### Unfair Competition

■■■ Finally, Durham alleges that the trial court erred in failing to conclude that Shelcore was guilty of unfair competition in obtaining an allegedly improper injunction against Durham. The district court entered no findings on this claim.

On February 28, 1983, approximately 4 months after the commencement of this suit, Shelcore filed a request for default and a default judgment was entered on that date for failure of Durham to appear, plead, or otherwise defend. Simultaneously, the *CBS* case was being tried before a jury in the U.S. District Court for the District of New Jersey.[17] In early March 1983, the *CBS* jury returned a partial verdict on special interrogatories, that, while the '831 utility patent was valid, Shelcore had failed to name one of its employees, Joseph Marino, as an inventor.[18] In January 1983, Shelcore had filed a motion under 35 U.S.C. § 256 (1982) to correct the inventorship of the '831 patent when Marino's role in the development of the invention claimed in the '831 patent became apparent. On March 14, 1983, however, prior to the actual correction of inventorship by the

PTO, Shelcore filed a motion for partial summary judgment on default in this case. An injunction was granted by Judge Broderick and remained in effect against Durham from March 18, 1983, to April 15, 1983.

In spite of the uncertain nature of Shelcore's rights on March 14, 1983, we decline to grant Durham the relief it requests. It is not necessary for us, in this case, to determine whether Shelcore's right to an injunction on that date was impaired by the problems of inventorship associated with the '831 utility patent. We do not determine whether those problems were merely technical or rendered the '831 patent unenforceable. Even were it unenforceable, Durham failed to defend this action initially and, accordingly, a default judgment was entered against it. While we in no way condone either Shelcore's deplorable lack of candor toward the district court or its chutzpah in seeking an injunction given the problems associated with the '831 patent on that date, an injunction was properly entered on the basis of the default judgment. When its interest in this litigation was finally aroused, Durham had no difficulty in dissolving that injunction. We cannot conclude that the trial court erred in failing to impose upon Shelcore liability to Durham for Shelcore's conduct in securing an allegedly improper injunction.

### Attorney Fees

■■■ Lastly, Durham requests, under Fed.R.App.P. 38, costs and attorney fees arising from this appeal, citing *Asberry v. United States Postal Service.*[19] Durham, however, misreads our opinion in *Asberry*, in which we held that, after November 12, 1982, "a frivolous appeal filed or proceeded with in this court, will result in imposition of *damages* and costs upon appellant and counsel in accordance with Rule

---

17. *See supra* note 9.

18. In a state declaratory judgment action brought in New Jersey by Shelcore, Marino's claim of sole inventorship was rejected and Shelcore was held to be the owner of the '831 patent *ab initio.* That judgment was not en-

tered, however, until June 16, 1983, 3 months after Shelcore secured an injunction against Durham.

19. *Asberry v. United States Postal Service,* 692 F.2d 1378, 215 USPQ 921 (Fed.Cir.1982).

38." [20] (Emphasis supplied; footnote omitted.)

While the court recognized in *Asberry* that rule 38 has been held to justify the award of damages and *attorney fees* in favor of the United States,[21] it did not hold that "damages and costs" typically include attorney fees nor did it hold that damages must necessarily equal attorney fees, even in a suit involving the United States.

Attorney fees on appeal are recoverable, however, under 35 U.S.C. § 285 (1982) in an exceptional case.[22] Thus, we consider Durham's request for attorney fees as a request under section 285.

Based on our review of the record, we find that Shelcore's appeal was not frivolous, nor is this appeal exceptional under section 285. Shelcore's arguments on appeal appear to be reasonable and to have been presented in good faith. Durham fails to detail any circumstances of record such as would justify the award of either damages and costs under *Asberry* or attorney fees under section 285. While Shelcore's conduct in securing the injunction may well have made this an exceptional case below, Durham did not pursue that argument either below or on appeal. Accordingly, Durham's request for costs and attorney fees on appeal is denied.

*Conclusion*

In summary, the district court did not err in holding claims 1–12 of the '831 patent invalid for obviousness under 35 U.S.C. § 103. Nor did it err in holding that the '780 design patent is not invalid for double patenting. Further, the trial court's finding that the '780 design patent is not infringed by Durham's "Buckle Up 'N Drive" toy is not clearly erroneous. Finally, we hold the trial court did not err in failing to conclude that Shelcore was guilty of unfair competition in obtaining an al-

legedly improper injunction against Durham on the basis of a default judgment.

AFFIRMED.

---

**20.** 692 F.2d at 1382, 215 USPQ at 921.

**21.** See *United States v. Potamkin Cadillac Corp.,* 689 F.2d 379, 381–82 (2d Cir.1982).

**22.** *Rohm & Haas Co. v. Crystal Chem. Co.,* 736 F.2d 688 (Fed.Cir.1984) (activities on appeal may render case exceptional under § 285 for purposes of award of attorney fees on appeal).