CATALINA LIGHTING, INC.,
**Plaintiff–Appellant,**

**and**

**Home Depot USA, Inc., Third Party Defendant–Appellant,**

v.

**LAMPS PLUS, INC. and Pacific Coast Lighting, Defendants/Third Party Plaintiffs–Appellees.**

No. 01–1563.

United States Court of Appeals, Federal Circuit.

June 28, 2002.

Joseph J. Zito, Zito & Grandinetti, Damascus, Maryland, argued for plaintiff0appellant and third party defendant-appellant. With him on the brief were kendal M. Sheets, and Paul Grandinetti.

John A. O'Malley, Fulbright & Jaworski L.L.P., of Los Angeles, California, argued for defendants/third party plainitffs-appellees. With him on the brief was Todd M. Sorrell.

Before MAYER, Chief Judge, BRYSON, and PROST, Circuit Judges.

PROST, Circuit Judge.

Catalina Lighting, Inc. ("Catalina") and Home Depot USA, Inc. ("Home Depot") appeal from the decisions of the United States District Court for the Southern District of Florida denying their motion for judgment as a matter of law and entering judgment in accordance with a jury verdict that Catalina and Home Depot willfully infringed U.S. Patent No. 5,221,141 and U.S. Design Patent No. 353,904, that these patents have not been shown to be invalid or unenforceable, and that Catalina and Home Depot owed damages for their infringement. *See Catalina Lighting, Inc. v. Lamps Plus, Inc.*, No. 99–CV–7200 (S.D. Fla. June 25, 2001). We affirm the district court's rulings as to infringement, validity, and enforceability. However, we affirm-in-part and reverse-in-part the damages award because it is contrary to law.

## BACKGROUND

Lamps Plus, Inc. ("Lamps Plus") is the owner of U.S. Patent No. 5,221,141 ("the '141 patent") and U.S. Design Patent No. 353,904 ("the '904 patent"). The '141 patent is a utility patent for a "Stand–Alone Electric Lamp" that has a general area light source positioned at the top of a stem, as well as a plurality of adjustable light sources affixed to the stem for providing task lighting directed to specific areas. *See* '141 Patent, Figs. 1–3, *infra.* The '904 design patent is for the ornamental design of a "Combined Torchiere Lamp and Adjustable Accent Lights."

U.S. Patent June 22, 1993 Sheet 1 of 2 5,221,141

U.S. Patent June 22, 1993 Sheet 2 of 2 5,221,141

Dennis Swanson, the inventor of these patents and President of Lamps Plus, calls his invention a "tree torchiere." Lamps Plus sells tree torchieres and other lamps through its retail stores located in the Western states. Pacific Coast Lighting sells Swanson's tree torchiere and other lighting products on a wholesale level throughout the United States. Lamps Plus and Pacific Coast Lighting have sold $22 million worth of tree torchieres since 1991. The lamps retail for $79–$99 each.

Home Depot also sells lamps and other lighting products. In 1998, one of Home Depot's buyers observed a Swanson tree torchiere lamp at a Lamps Plus store and

contacted Catalina to inquire whether Catalina could supply such a lamp to Home Depot. Upon investigation, counsel for Catalina learned that the Swanson tree torchiere was the subject of the '141 and '904 patents but suggested that infringement could be avoided by using a mechanism for attaching the adjustable lights to the stem of the torchiere that was different from the attachment mechanism required by the claims of the '141 patent. This attachment mechanism is a limitation of independent claim 5 of the '141 patent, which includes a

means for affixing each of said separate direct light reflectors to said stem at spaced apart positions disposed between said base and said general lighting means; said means for affixing each direct light reflector including: (a) a first hollow cylinder affixed to and extending from said stem; (b) a second hollow cylinder defining a through opening in a wall thereof rotatably affixed to said first hollow cylinder; (c) a protrusion extending from said light reflector, and (d) said protrusion being received within said second hollow cylinder and extending through said opening in said wall.

'141 patent, col. 4, l. 63 col. 5, l. 11. This means for affixing is shown above in Figure 4 of the patent as a ball-and-socket type joint.

Catalina chose to manufacture a lamp that used a clevis type hinge, as shown in the figure below:

In 1999, Catalina began selling its version of the tree torchiere lamp to Home Depot for $12.94 per lamp. Home Depot then sold these lamps retail for approximately $25 per lamp.

On September 10, 1999, Lamps Plus and Pacific Coast sued Home Depot in the Central District of California for infringement of the '141 and '904 patents and for trade dress infringement. In response, Catalina filed a declaratory judgment action in the Southern District of Florida on September 15, 1999, seeking a declaration that Catalina's torchiere lamps do not infringe the '141 or '904 patents and that the patents are invalid and unenforceable. Lamps Plus filed a counterclaim for patent infringement and trade dress infringement by Catalina and a third party complaint for patent infringement and trade dress infringement by Home Depot. Lamps Plus dismissed the California action after the district court denied its motion for a temporary restraining order.

On November 24, 2000, Catalina filed a motion for summary judgment of noninfringement, invalidity under 35 U.S.C. § 103 and § 112, and unenforceability. The district court deferred ruling on Catalina's motion. On March 28, 2001, the court construed the affixing means[1] of claim 5 (the only element in dispute) as follows:

| Claim 5 | Markman Interpretation |
|---|---|
| Means for affixing each of said separate direct light reflectors to said stem at spaced apart positions disposed between said base and said general lighting means; | no interpretation is needed |
| said means for affixing each separate direct light reflector including: | no interpretation is needed |
| (a) a first hollow cylinder affixed to and extending from the stem; | a first cylinder, that is, a hollow piece of which the two ends are equal and parallel circles, and the intervening curved surface is such as would be traced out by a straight line moving parallel to itself with its ends in the circumference of those circles, which first cylinder is affixed to and extending out some distance from the lamp pole. |
| (b) a second hollow cylinder defining a through opening in a wall thereof rotatably affixed to said first hollow cylinder; | another cylinder containing an opening in its wall, which cylinder is attached to and coextensive for some length with the first cylinder in such a manner as to allow it to rotate around the axis of the first cylinder. |
| (c) a protrusion extending from said light reflectors; and | no interpretation is needed |
| (d) said protrusion being received within said second hollow cylinder and extending through said opening in said wall; | the protrusion from the task lamp extends into the second hollow cylinder through the opening in its wall in such a manner so that when operated in conjunction with the rotatably affixed cylinders the task lamp is universally adjustable. |

*Catalina Lighting, Inc. v. Lamps Plus, Inc.*, No. 99–7200–CIV (Mar. 28, 2001) (Order Adopting Markman Findings).

The case proceeded to trial before a jury on April 2, 2001. After the close of all the evidence but before closing arguments, Catalina moved for judgment as a matter of law that it did not infringe the asserted patents, that the design patent would have been obvious, and that Lamps Plus failed to prove damages for infringement of the design patent. The court denied Catalina's motion, and on April 6, 2001, the jury returned a special verdict form stating that: Catalina infringed the '141 patent and owed damages of $660,000 (representing a reasonable royalty); Catalina infringed the '904 patent and owed damages of $275,194 (equaling Catalina's profits); Home Depot infringed the '141 patent and owed damages of $630,190 (representing a reasonable royalty); Home Depot infring-

---

1. The district court does not appear to have treated this claim language as a means-plus-function limitation according to 35 U.S.C. § 112, ¶ 6. The parties have not appealed this aspect of the district court's claim construction.

ed the '904 patent and owed damages of $492,748 (equaling Home Depot's profits); the infringement by Catalina and Home Depot was willful; neither patent was invalid for obviousness; and neither patent was unenforceable due to inequitable conduct. After trial, Catalina filed "renewed" motions for judgment as a matter of law regarding noninfringement, damages,[2] willful infringement, invalidity and unenforceability.

On June 25, 2001, the court entered judgment in accordance with the jury's verdict. *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, No. 99–7200–CIV (S.D. Fla. June 25, 2001) (Judgment on Jury Verdict and Permanent Injunction). The court, however, modified the damages award for infringement of the '141 patent, replacing the jury's separate findings for Catalina and Home Depot with a single award of $660,000 for which Catalina and Home Depot were jointly and severally liable. The court also assessed prejudgment interest and entered a permanent injunction against Catalina and Home Depot. The damages award, with interest, totaled $1,636,589.78. The court declined to enhance damages or award attorneys fees in spite of the jury's finding of willful infringement. *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, No. 99–7200–CIV (S.D. Fla. June 25, 2001) (Order on Post–Trial Motions).

Catalina filed this appeal, challenging the judgment of infringement, validity, and enforceability. Catalina also argues that the reasonable royalty award was not supported by substantial evidence and that infringer profits should not have been awarded. We address each of these argu-

ments in turn. Jurisdiction is proper under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

 A district court may grant judgment as a matter of law ("JMOL") when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.P. 50(a)(1). We review a district court's decision to deny a motion for JMOL *de novo*, reapplying the JMOL standard used by the district court. *Sextant Avionique, S.A. v. Analog Devices, Inc.*, 172 F.3d 817, 824, 49 USPQ2d 1865, 1869 (Fed.Cir.1999). On appeal, we must consider the record evidence in the light most favorable to the non-movant and draw all reasonable inferences in its favor "without disturbing the jury's credibility determinations or substituting our resolutions of conflicting evidence for those of the jury." *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 147 F.3d 1374, 1376–77, 47 USPQ2d 1289, 1290 (Fed.Cir.1998). To prevail on appeal, Catalina must show that "the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied from the jury's verdict cannot in law be supported by those findings." *Celeritas Techs., Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1358, 47 USPQ2d 1516, 1519 (Fed.Cir.1998). If a party fails to move for JMOL at the close of all the evidence, that party is precluded from later challenging the sufficiency of the evidence supporting the jury's factual findings. *See Southwest Software, Inc. v. Harlequin Inc.*, 226 F.3d 1280, 1290, 56 USPQ2d 1161, 1168 (Fed.Cir.2000).

---

2. Catalina's renewed motion argued that Lamps Plus was not entitled to any damages for infringement of the design patent and that damages for the utility patent should be limit-

ed to a 5% reasonable royalty. Catalina's pre-verdict motion, however, was limited to damages for the design patent.

## I. INFRINGEMENT

Catalina challenges the sufficiency of the evidence supporting the jury's finding of infringement of claim 5 of the '141 patent and argues that the jury's finding of infringement of the '904 design patent is contrary to law. We affirm each of the jury's findings.

### A. The '141 Patent

An infringement analysis is a two-step process in which the court first construes the claims as a matter of law. The properly construed claims are then compared to the accused device to determine, as a question of fact, whether all of the claim limitations are present in the accused device. *See Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454, 46 USPQ2d 1169, 1172 (Fed.Cir.1998) (en banc).

The jury found that Catalina literally infringed claim 5 of the '141 patent. Lamps Plus did not assert infringement under the doctrine of equivalents or infringement of any other claims of the '141 patent. On appeal, Catalina challenges the sufficiency of the evidence supporting the jury's finding of infringement, but does not contest the court's claim construction. Thus, our focus is on the second step of the infringement analysis: the comparison of claim 5 as construed by the court to the Catalina lamp accused of infringement. With respect to this second step, Lamps Plus needed to prove by a preponderance of the evidence that the accused product met each and every limitation of claim 5. *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1366, 61 USPQ2d 1647, 1653–54 (Fed.Cir.2002).

Catalina argues that the jury's verdict is not supported by substantial evidence because the Catalina lamps do not have the affixing means required by claim 5. According to Catalina, it uses a clevis-type hinge that does not have first and second cylinders, does not have a second cylinder with a through hole therein, does not have a second cylinder that receives a protrusion therein, and is not universally adjustable, all as required by the district court's claim construction. At trial, the jury was presented with the evidence of an accused Catalina lamp, including the separate components that formed the clevis-type hinge used by Catalina. The jury also heard the testimony of a former Catalina employee regarding the structure of the Catalina joint.

Referring to the figure below, this evidence shows that the Catalina joint includes a short cylindrical tube A, which passes through a hole in a mounting plate B and into the stem of the lamp. The mounting plate B is affixed to the stem of the lamp by two screws and has a "collar" C which is shaped as a short, hollow cylinder extending from the mounting plate B. A cylindrical, hollow tube D is inserted into the collar "C" and receives a portion of tube A that protrudes through the hole in the mounting plate B. The tube D, collar C and tube A share a common axis, and tube D can rotate about this axis within the collar C and around tube A. Tube D has a wide, angled notch (not visible in the figure) cut out of its wall at one end for receiving a clevis E. The clevis E is positioned within, and extending beyond, this notch to receive a protrusion F from a track light. The protrusion F is inserted into the clevis E and elements E and F are joined together by a pin G. The resulting joint is sufficiently adjustable to allow light to be pointed in every direction but directly behind the track light's location of attachment to the stem of the lamp.

Certainly the Catalina joint is different from the ball-and-socket joint shown in the figures of the '141 patent. But infringement is to be determined by comparing the asserted claim to the accused device, not by comparing the accused device to the figures of the asserted patent. *See Zenith Labs., Inc. v. Bristol–Myers Squibb Co.*, 19 F.3d 1418, 1423, 30 USPQ2d 1285, 1289 (Fed.Cir.1994) ("[I]t is error for a court to compare in its infringement analysis the accused product or process with the patentee's commercial embodiment or other version of the product or process; the only proper comparison is with the claims of the patent."). The jury considered and rejected the same factual arguments that Catalina presents now on appeal and, taking the evidence in the light most favorable to Lamps Plus and resolving any conflicting evidence in Lamps Plus' favor, *Applied Med.*, 147 F.3d at 1376–77, 47 USPQ2d at 1290, we see no reason to disturb the jury's verdict. We affirm the judgment of infringement of claim 5 of the '141 patent by Catalina and Home Depot.

## B. The '904 Patent

As with utility patents, determining whether a design patent is infringed is a two-step process. First, the court must construe the design patent's claim. *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577, 36 USPQ2d 1417, 1420 (Fed. Cir.1995). Next, the fact-finder must compare the claim and the accused device, employing both the "ordinary observer" test and the "point of novelty" test. *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1377, 62 USPQ2d 1065, 1067 (Fed.Cir.2002). According to the "ordinary observer" test,

> if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Gorham Mfg. Co. v. White*, 81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 (1871). According to the "point of novelty" test, the fact-finder must determine whether the ac-

cused design appropriates the points of novelty that distinguish the patented design from the prior art. *Contessa Food Prods.*, 282 F.3d at 1377, 62 USPQ2d at 1067. Infringement of a design patent is a question of fact. *Shelcore, Inc. v. Durham Indus., Inc.*, 745 F.2d 621, 628–29, 223 USPQ 584, 590 (Fed.Cir.1984).

Following these guidelines, we must determine whether the jury's finding of infringement was supported by substantial evidence, drawing all reasonable inferences in Lamps Plus' favor. We begin our analysis by considering whether the jury had substantial evidence showing that an ordinary observer, giving such attention as a purchaser usually gives, would believe that the patented design and the Catalina design are substantially the same.[3] The jury had before it a sample Catalina lamp accused of infringement, certainly very pertinent evidence on this issue. Catalina identifies no reason why its lamp alone does not provide substantial evidence of whether an ordinary observer would believe the patented lamp and the Catalina lamp to be substantially the same. The jury also had the benefit of expert testimony presented by Lamps Plus on this issue; Catalina presented no expert testimony of its own. Based on our review of the record, the jury had substantial evidence before it that the Catalina lamp met the ordinary observer prong of the infringement analysis.

Next, we must determine whether substantial evidence shows that Catalina's design appropriated the patented design's points of novelty. Lamps Plus identified the points of novelty to include the spacing and placement of the bullet lights and the shape of the diffuser at the top of the lamp. Catalina claims that these features are functional and found in the prior art.

The inventor Swanson testified about these points of novelty and why they were motivated by design considerations, not function. Specially, he stated that he wanted to give the product, because intrinsically it would look ugly, an overall balance. So I placed one bullet approximately two-thirds of the way off the floor, and the other bullet about equal distance between that point and the shade on the opposite side. According to Swanson, he could put the lights together at the top of the lamp or within ninety degrees of each other and have the same function, but it would look terrible. Given Swansons testimony, the jury was presented with evidence that these features are not functional, but instead were aesthetic design choices.

Catalina also claims that these features are found in the prior art and therefore are not points of novelty. This argument was not raised in Catalinas opening brief and was referenced for the first time in its reply brief. Even then, the briefing failed to identify which prior art references allegedly contained these features and where this prior art is a part of the record. In contrast, Lamps Plus presented expert testimony at trial that these features are points of novelty. Having failed to identify any record evidence to the contrary, Catalina has not persuaded us that the jury's finding on this prong of the infringement analysis is erroneous.

We conclude that the jury's finding of infringement of the 904 patent is supported by substantial evidence.

## II. INVALIDITY AND UNENFORCEABILITY

■ Catalina next claims that it is entitled to judgment as a matter of law that

---

**3.** The first step in the analysis is claim construction. However, because the parties have not raised this issue on appeal we move to the next step of the analysis: application of the ordinary observer test.

the '141 and '904 patents are invalid as obvious and unenforceable based on inequitable conduct. Initially, we note that Catalina failed to move for a JMOL of invalidity with respect to the '141 patent. Our review of the jury's validity findings with respect to the '141 patent is therefore limited to errors of law and we cannot enter a judgment in Catalina's favor based on the sufficiency of the evidence. *Southwest Software*, 226 F.3d at 1290, 56 USPQ2d at 1168. Catalina nevertheless merely reargues the evidence presented at trial. We cannot overturn the jury's verdict on that basis.

 Catalina did move for a JMOL of obviousness with respect to the '904 patent and the district court denied this motion. We review the ultimate determination of obviousness *de novo*. *Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538, 541, 16 USPQ2d 1622, 1624 (Fed.Cir.1990). This ultimate determination, however, requires underlying factual findings, which this court reviews to determine whether they are supported by substantial evidence and, if they are, whether those findings support the legal conclusions which necessarily were drawn by the jury in forming its verdict. *Id.* Catalina argues that the '904 patent would have been obvious based on a combination of Lamps Plus' prior art lamps and four references cited by the Examiner during prosecution of the patent. The '904 patent is presumed to be valid and Catalina needed to present clear and convincing evidence of obviousness in order to prevail. We do not believe the record contains such clear and convincing evidence. Catalina points to nothing in the trial record that shows where it introduced evidence of a suggestion or motivation to combine these references. *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1578–79, 42 USPQ2d 1378, 1383 (Fed.Cir.1997) ("[T]he record must

provide a teaching, suggestion, or reason to substitute.... The absence of such a suggestion to combine is dispositive in an obviousness determination."). Lamps Plus, on the other hand, presented evidence of secondary considerations supporting nonobviousness. *Id.* at 1579, 110 F.3d 1573, 42 USPQ2d at 1384 ("[O]bjective indicia may often be the most probative and cogent evidence of nonobviousness in the record."). We therefore affirm the district court's ruling denying Catalina's motion for judgment as a matter of law that the '904 patent is not obvious.

 Likewise, we do not believe that the ruling of no inequitable conduct should be overturned. "Inequitable conduct requires that the patentee withheld material information from the patent examiner or submitted false material information, with the intent to deceive or mislead the examiner into granting the patent. Both materiality and intent to deceive must be proven by clear and convincing evidence." *Upjohn Co. v. Mova Pharm. Corp.*, 225 F.3d 1306, 1312, 56 USPQ2d 1286, 1291 (Fed.Cir.2000) (citing *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 872, 9 USPQ2d 1384, 1389 (Fed.Cir.1988) (en banc)).

 Catalina moved for judgment as a matter of law that the patents are unenforceable for inequitable conduct and the district court denied this motion. Catalina argues that Swanson and his attorney engaged in inequitable conduct by failing to tell the Examiner about the prior art mechanisms that could be used to attach a bullet light to the stem of a lamp, including the swivel disclosed by U.S. Patent No. 4,492,488 to Warshawsky. Catalina failed, however, to present any evidence that the applicant or his attorney intended to deceive the PTO. Instead, Catalina argues that intent can be inferred "when knowledge and materiality are as strong as they

are here." However, "[i]ntent to deceive can not be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent." *Id.* (quoting *Hebert v. Lisle Corp.,* 99 F.3d 1109, 1116, 40 USPQ2d 1611, 1615 (Fed.Cir.1996)). Lamps Plus presented evidence that the prior art identified by Catalina was cumulative and therefore not material. In addition, the jury considered the testimony of Swanson and his attorney explaining why particular prior art was not cited during prosecution. Based on our review of the record, the jury's findings are supported by substantial evidence. We affirm the district court's ruling denying Catalina's motion for judgment as a matter of law that the patents are unenforceable for inequitable conduct.

### III. DAMAGES

■ Lamps Plus received separate recoveries for infringement of the '141 patent and infringement of the '904 patent. Both recoveries were calculated from the same sales of infringing lamps. For the '141 patent, Catalina and Home Depot were found jointly and severally liable for $660,000 in reasonable royalties under 35 U.S.C. § 284, based on a $10 per lamp royalty. For the '904 patent, Lamps Plus received Catalina's profits of $275,194 and Home Depot's profits of $492,748 under 35 U.S.C. § 289. Catalina argues that the jury's award of a $10 per lamp royalty for infringement of the '141 patent was not supported by substantial evidence, that Lamps Plus is not entitled to any damages for infringement of the design patent because, according to Catalina, the infringement was not willful and damages can only be awarded when the infringement was willful, and that Lamps Plus received a double recovery by the award of both reasonable royalties and infringer profits. Thus, we consider here: (1) whether the

jury's award of a reasonable royalty under § 284 was supported by substantial evidence; (2) whether the jury's award of infringer profits under § 289 was contrary to law; and (3) if each of these individual awards was proper, whether Lamps Plus can receive separate and cumulative recoveries based on the sale of the same product.

■ We will uphold the jury's damages award unless it is "grossly excessive or monstrous, clearly not supported by evidence, or based only on speculation or guesswork." *Oiness v. Walgreen Co.,* 88 F.3d 1025, 1031, 39 USPQ2d 1304, 1308 (Fed.Cir.1996). As explained below, we find that Lamps Plus improperly obtained a double recovery by receiving royalties and infringer profits.

### A. Damages for the '141 Patent

"Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284 (1994). Lamps Plus' damages theory was based on a reasonable royalty that a willing licensor and willing licensee might have agreed to during a hypothetical negotiation at the time infringement began. *See Rite–Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1554, 35 USPQ2d 1065, 1076–77 (Fed.Cir.1995) (en banc). Swanson testified at trial that Lamps Plus pays another company a royalty of $10 per lamp and that he would expect to receive at least that same amount to license his tree torchiere design. Catalina presented testimony from a former employee that Catalina pays another company a 5% royalty per lamp. In addition, Catalina argued that it never would have agreed to

pay a $10 royalty for a lamp that it sold for $12.94. Lamps Plus, however, presented testimony that Catalina could afford to pay a $10 royalty by simply increasing the price of its lamp.

Having heard the evidence presented by both sides in this case, the jury accepted Lamps Plus' theory of damages over Catalina's. The jury's royalty award is not "grossly excessive or monstrous, clearly not supported by evidence, or based only on speculation or guesswork." *Oiness*, 88 F.3d at 1031, 39 USPQ2d at 1308. In addition, Catalina failed to move for JMOL regarding damages for the '141 patent prior to the jury's verdict. Fed.R.Civ.P. 50(a)(2); *Southwest Software*, 226 F.3d at 1290, 56 USPQ2d at 1168. For these reasons, we will not disturb the jury's determination as to the amount of reasonable royalties.

### B. Damages for the '904 Patent

 A design patentee may recover damages under 35 U.S.C. § 284 or under 35 U.S.C. § 289, entitled "Additional remedy for infringement of design patent," which states:

> Whoever during the term of a patent for a design, without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit, but not less than $250, recoverable in any United States district court having jurisdiction of the parties.
>
> Nothing in this section shall prevent, lessen, or impeach any other remedy which an owner of an infringed patent has under the provisions of this title, but

he shall not twice recover the profit made from the infringement.

Lamps Plus recovered the profits made by Catalina and Home Depot from their sales of lamps that infringe the '904 patent. Catalina argues that this award was erroneous because, according to Catalina, infringer profits can only be awarded when a design patent is willfully infringed and Catalina does not believe the evidence supports the jury's finding of willful infringement. Catalina's argument is based on case law that construes 35 U.S.C. § 74 (1887), a predecessor to § 289. *See W. Gas Fixture v. Jefferson Glass Co.*, 296 F. 128 (4th Cir.1924) and *Swarthmore Junior v. Miss Greeley Junior Frocks, Inc.*, 52 F.Supp. 992, 993, 59 USPQ 300 (S.D.N.Y. 1943) ("Under this statute, a wilful [sic] infringer of a design patent is liable in the amount of $250, and also for any profits he has made in excess of $250.00."). Section 74 defined design patent infringement as "apply[ing] the design secured by such letters patent . . . knowing that the same has been so applied." Act of Feb. 4, 1887, ch. 105, 24 Stat. 387. The present version of § 289, which has been in effect since 1952, has no such "knowing" requirement. Lamps Plus is therefore entitled to damages for Catalina's infringement regardless of whether the infringement was willful.

### C. Combined Damages

 Finally, Catalina argues that Lamps Plus was not entitled to recover a reasonable royalty for infringement of the '141 patent as well as infringer profits for infringement of the '904 patent, an issue that the parties characterize as one of first impression. Relying on *Braun Inc. v. Dynamics Corp.*, 975 F.2d 815, 24 USPQ2d 1121 (Fed.Cir.1992), Catalina argues that a patentee must elect to recover either a reasonable royalty or infringer profits. In *Braun*, we considered whether a court

could treble damages for willful infringement of a design patent. Our decision compared the language of § 289 to § 284. Section 284 states that a patentee shall recover "damages adequate to compensate for the infringement" and "the court may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284 (1994). Section 289, however, has no provision for enhanced damages and states that the patentee "shall not twice recover the profit made from the infringement." *Id.* § 289. Because Braun elected to recover infringer profits under § 289, we determined that "the district court clearly exceeded its statutory authority" by trebling damages. *Braun,* 975 F.2d at 824, 24 USPQ2d at 1128. *Braun* therefore does not address the specific issue raised by Catalina: whether a patentee may recover infringer profits and a reasonable royalty when both a design patent and a utility patent have been infringed by the sale of a single product.

▮ When only a design patent is at issue, a patentee may not recover both infringer profits and additional damages under § 284. The last paragraph of § 289 states:

> Nothing in this section shall prevent, lessen, or impeach any other remedy which an owner of an infringed patent has under the provisions of this title, *but he shall not twice recover the profit made from the infringement.*

35 U.S.C. § 289 (1994) (emphasis added). "[T]he purpose of this latter phrase is to insure that a patentee not recover both the profit of an infringer and some additional damage remedy from the same infringer, such as a reasonable royalty." *Bergstrom v. Sears, Roebuck & Co.,* 496 F.Supp. 476, 496, 207 USPQ 481, 501 (D.Minn.1980) (relied on by *Braun,* 975 F.2d at 824, 24 USPQ2d at 1128); *see also Henry Hanger & Display Fixture Corp. v. Sel–O–Rak*

*Corp.,* 270 F.2d 635, 643–44, 123 USPQ 3, 9 (5th Cir.1959) ("If the statutory measure of compensatory damages is to be found in 35 U.S.C.A. 289, a royalty in addition to profits should not have been awarded since the profit was in excess of the minimum as fixed by that section."). Thus, while § 289 prohibits a double recovery of an infringer's profits, it does not directly address whether an additional remedy may be recovered when both a design patent and a utility patent have been infringed.

We resolve this issue by focusing on the conduct that has damaged Lamps Plus: the sale of Catalina's tree torchiere lamps. Each sale constitutes an infringement of the '141 utility patent because "whoever without authority makes, uses, offers to sell or sells any patented invention" is an infringer. 35 U.S.C. § 271(a) (1994). Likewise, the same sale constitutes an infringement of the '904 design patent. *Id.* § 289 (permitting the award of infringer profits from someone who "applies the patented design ... for the purpose of sale" or "sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied."). Lamps Plus is entitled to damages for each infringement, but once it receives profits under § 289 for each sale, Lamps Plus is not entitled to a further recovery from the same sale because the award of infringer profits under § 289 also constitutes "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." *Id.* § 284; *see CPG Prods. Corp. v. Pegasus Luggage, Inc.,* 776 F.2d 1007, 1014 n. 4, 227 USPQ 497, 502 n. 4 (Fed.Cir.1985) ("Though the district court ordered accountings for damages resulting from patent infringement and from unfair competition, Lark is not entitled to dual damages resulting from the same act."). The reasonable royalty in

this case was determined to be $660,000, the minimum amount that Lamps Plus is entitled to receive under § 284. We have also determined that Lamps Plus can recover infringer profits of $767,942, which is more than the reasonable royalty sought by Lamps Plus under § 284. Thus, the recovery of infringer profits resulting from the single act of selling lamps satisfies Lamps Plus' entitlement under § 289 and more than satisfies its entitlement under § 284. *See, e.g., Contour Chair Lounge Co. v. True–Fit Chair, Inc.,* 648 F.Supp. 704, 719, 1 USPQ2d 1353, 1364 (E.D.Mo. 1986) ("Plaintiff is also entitled to lost profits for [trade dress infringement]; however, plaintiff has already recovered these damages under its patent claim."). We therefore reverse the award of damages in the amount of $758,275.37, based on a reasonable royalty plus prejudgment interest, and affirm the award of damages of infringer profits plus prejudgment interest in the amount of $316,223.92 against Catalina and $562,090.49 against Home Depot.

### CONCLUSION

For the foregoing reasons, the judgment of infringement, no invalidity and no unenforceability is affirmed. The award of damages is affirmed-in-part and reversed-in-part such that Lamps Plus shall recover the profits of Catalina and Home Depot, plus prejudgment interest.

### COSTS

No costs.

*AFFIRMED–IN–PART, REVERSED–IN–PART.*