**APPLIED MEDICAL RESOURCES CORPORATION, Plaintiff– Appellee,**

v.

**UNITED STATES SURGICAL CORPORATION, Defendant– Appellant.**

No. 97–1526.

United States Court of Appeals, Federal Circuit.

June 30, 1998.

Rehearing Denied; Suggestion for Rehearing In Banc Declined Aug. 21, 1998.

William K. West, Jr., Pillsbury Madison & Sutro LLP, of Washington, DC, argued for plaintiff-appellee. With him on the brief were Michael A. Conley, and David W. Long.

J. Allan Galbraith, Williams & Connolly, of Washington, DC, argued for defendant-appellant. Of counsel on the brief were Thomas R. Bremer and John C. Andres, United States Surgical Corporation, of Norwalk, Connecticut.

Before MAYER, Chief Judge, PLAGER and SCHALL, Circuit Judges.

MAYER, Chief Judge.

United States Surgical Corporation appeals from the judgment of the United States District Court for the Eastern District of Virginia, Civ. Action No. 96–CV–1217 (June 10, 1997). We affirm.

## Background

Applied Medical Resources Corporation (Applied Medical) owns United States Patents Nos. 5,209,737, 5,308,336, and 5,385,553, all relating to advances in trocar seal technology.[1] Applied Medical sued United States Surgical Corporation (Surgical) for, *inter alia,* infringing claims 1 and 32 of the '737 patent, claims 4 and 23 of the '336 patent, and claim 18 of the '553 patent with its Versaport trocar, and for infringing claim 4 of the '553 patent with its Premium Surgiport Seal Adapter System. Surgical denied infringement and advanced an affirmative defense that the Sure–Seal floating valve and the EndoPort five millimeter trocar anticipated the asserted claims of the '553 patent. It also advanced as an affirmative defense that the inventors of all three patents failed to disclose the best mode of practicing the inventions. Surgical moved for summary judgment on the basis of these defenses. Finding factual disputes, the court denied Surgical's motion on anticipation, but deferred judgment on the alleged violations of the best mode requirement until the close of evidence.

The jury found all three patents infringed and not invalid. The jury also found the infringements to be willful and fixed damages at a single royalty rate of seven percent. The court denied Surgical's renewed motion under Federal Rule of Civil Procedure 50(b) for judgment as a matter of law, permanently enjoined Surgical from making or selling the infringing devices, and enhanced damages to a total in excess of twenty million dollars.

Surgical appeals the trial court's ruling on the affirmative defenses, its decision to exclude from evidence the opinion of an administrative patent judge resolving a patent interference proceeding, and its circumscription of expert testimony relating to the possible range of means-plus-function equivalents.

## Discussion

■ We review a trial court's decision on a motion for judgment as a matter of law following a jury verdict by reapplying its own standard of review. *See, e.g., Dana Corp. v. IPC Ltd. Partnership,* 860 F.2d 415, 417, 8 USPQ2d 1692, 1694 (Fed.Cir.1988). Therefore, for Surgical to prevail on appeal it must prove that the jury's factual findings were not supported by substantial evidence or that the facts were not sufficient to support the conclusions necessarily drawn by the jury on the way to its verdict, *see, e.g., Unidisco, Inc. v. Schattner,* 824 F.2d 965, 967, 3 USPQ2d 1439, 1441 (Fed.Cir.1987); *D.M.I., Inc. v. Deere & Co.,* 802 F.2d 421, 425, 231 USPQ 276, 278 (Fed.Cir.1986); *Railroad Dynamics, Inc. v. A. Stucki Co.,* 727 F.2d 1506, 1512–13, 220 USPQ 929, 936 (Fed.Cir.1984), or that the trial court applied the law erroneously, *see, e.g., Dana Corp.,* 860 F.2d at 418, 8 USPQ2d at 1695.

■ The trial court may grant Surgical's motion for judgment as a matter of law only if, upon the record before the jury, it was convinced that reasonable persons could not reach a verdict for Applied Medical. *See, e.g., Railroad Dynamics,* 727 F.2d at 1513, 220 USPQ at 936. Thus, on appeal we must consider the evidence of record in the light

1. The '553 patent is a continuation-in-part of the application that matured into the '336 patent, which is a continuation-in-part of the application that matured into the '737 patent.

most favorable to Applied Medical, drawing all reasonable inferences in its favor, without disturbing the jury's credibility determinations or substituting our resolutions of conflicting evidence for those of the jury. *See, e.g., Connell v. Sears Roebuck & Co.,* 722 F.2d 1542, 1546, 220 USPQ 193, 197 (Fed.Cir. 1983).

### Best Mode

 The first paragraph of section 112 provides in relevant part that the specification "shall set forth the best mode contemplated by the inventor of carrying out his invention." 35 U.S.C. § 112 ¶ 1 (1994). We have held that this analysis includes two components:

> The first is whether at the time the inventor filed his patent application, he knew of a mode of practicing his claimed invention that he considered to be better than any other. This part of the inquiry is wholly subjective, and resolves whether the inventor must disclose any facts in addition to those sufficient for enablement. If the inventor in fact contemplated such a preferred mode, the second part of the analysis compares what he knew with what he disclosed—is the disclosure adequate to enable one skilled in the art to practice the best mode or, in other words, has the inventor "concealed" his preferred mode from the "public"? Assessing the adequacy of the disclosure, as opposed to its necessity, is largely an objective inquiry that depends upon the scope of the claimed invention and the level of skill in the art.

*Chemcast Corp. v. Arco Indus. Corp.,* 913 F.2d 923, 927–28, 16 USPQ2d 1033, 1036–37 (Fed.Cir.1990). Because the first component focuses on the applicant's state of mind, a question of fact, we review this aspect of the jury's verdict for substantial evidence. *See, e.g., In re Hayes Microcomputer Prods., Inc.,* 982 F.2d 1527, 1536, 25 USPQ2d 1241, 1248 (Fed.Cir.1992); *Chemcast,* 913 F.2d at 928, 16 USPQ2d at 1037. In so doing, we observe that an applicant is obliged to disclose nonclaimed elements necessary to the operation or carrying out of the invention to which the patent is directed. *See, e.g., Dana*

Corp., 860 F.2d at 418, 8 USPQ2d at 1695 (fluoride surface treatment "necessary to satisfactory performance of [the] seal"); *Chemcast,* 913 F.2d at 928, 16 USPQ2d at 1037. However, where the invention relates only to a part of, or one aspect of, a device, an applicant is not required to disclose a nonclaimed element necessary to the operation of the overall device, but not necessary to the operation of the invention to which the patent is directed.

 Surgical correctly notes that each asserted claim contains a trocar seal limitation and that the patents disclose a preference for a soft, stretchy and sticky seal made of low durometer polymer material, such as C-flex®. From these facts, Surgical concludes that the patents are invalid for failing to disclose the use of Parylene–C—which at some point became the preferred lubricant for coating the seal—because a coating, such as Parylene–C, is necessary to prevent tearing.[2]

Surgical relies on the testimony of a named inventor, Mark Ritchart and the testimony of a technical expert, Ronald Luther, to prove that the three inventions could not work without Parylene–C. However, Applied Medical challenged this testimony with the testimony of Charles Hart and Barry Feinberg, and the cross-examination of Ritchart, explaining that while a lubricant like Parylene–C is necessary to the operation of the trocar and the seal, it plays no role in the functioning of the pre-seal dilator, the seal protector, and the floating seal, which, Messrs. Hart and Feinberg explained, are the inventions to which the '737, '336, and '553 patents are directed, respectively.

It is evident from the patents that they are directed to the inventions of a seal pre-dilator, a seal protector, and a seal floater. It is in this respect that we reach a different result than we did in *Dana Corp.,* 860 F.2d 415, 8 USPQ2d 1692, where the fluoride surface treatment was necessary to satisfactory performance of the invention to which the patent was directed, the valve stem seal. Although both Surgical and Applied Medical present arguments about the proper interpretation of the conflicting testimony as to

---

**2.** Parylene–C reduces the friction coefficient of the seal.

the relevance of Parylene–C, there is substantial evidence to support the jury's presumed finding on the matter. In sum, there is substantial evidence to support the jury's verdict that Surgical failed to prove by clear and convincing evidence that the inventors violated the first component of section 112's best mode disclosure requirement.

### Anticipation

■■■ "A person shall be entitled to a patent unless . . . the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C § 102(b) (1994). We have interpreted this statute as requiring a party seeking to invalidate a patent to prove that the allegedly invalidating patent or publication contains "each and every element of [the] claimed invention." *Lewmar Marine, Inc. v. Barient, Inc.,* 827 F.2d 744, 747, 3 USPQ2d 1766, 1767 (Fed. Cir.1987); *see also In re Graves,* 69 F.3d 1147, 1151, 36 USPQ2d 1697, 1700 (Fed.Cir. 1995) (whether a reference is anticipatory is a question of fact). A party seeking to prove anticipation must do so with clear and convincing evidence because the patent must be presumed valid. *See, e.g., Verdegaal Bros. v. Union Oil Co.,* 814 F.2d 628, 631, 2 USPQ2d 1051, 1053 (Fed.Cir.1987); *American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1360, 220 USPQ 763, 770 (Fed.Cir. 1984). Thus, the legal question on appeal is whether the jury had substantial evidence upon which it could conclude that Surgical failed to prove by clear and convincing evidence that a patent or publication contained each and every element of the '553 patent claims.

Surgical contends that each and every element in the asserted claims of the '553 patent was present in both the EndoPort 5 millimeter trocar that was commercially available in the mid–1980s and the SureSeal valve that Applied Medical demonstrated at a medical conference in April 1992. Because the '553 patent was filed on June 15, 1993, the April 1992 demonstration of a trocar containing the SureSeal valve can be invalidating only if the '553 patent is not entitled to a filing date that precedes April 1992. *See, e.g., Kenne-*

*cott Corp. v. Kyocera Int'l, Inc.,* 835 F.2d 1419, 1421, 5 USPQ2d 1194, 1197 (Fed.Cir. 1987) (a continuation-in-part application is entitled to the filing date of an earlier filed application if "the inventor had possession of the later-claimed invention on the filing date of the earlier application" and disclosed the invention in the earlier filed patent).

■■■ To begin with, Surgical misses the import of the district court's review. On appeal, Surgical states: "Surgical must show that there is no substantial evidence that would support a jury determination that Applied's own SureSeal trocar did not anticipate the '553 claims at issue. But, given that this was undisputed, the real issue was whether the '553 patent was entitled to the '737 or '336 priority date. . . ." The allegedly undisputed evidence to which Surgical referred is Luther's testimony comparing defendant's exhibit 273, the SureSeal valve brochure, to the fifth element of the '553 patent's eighteenth claim. This testimony reads in relevant part:

Q. And directing your attention to the means plus function in the last clause, does that show—or what is it in that drawing that satisfies Element 5 of the means plus function claim?

A. It depicts the levers, seal, and that sort of thing.

Q. The portion of Element 5, as the Court has construed it, relates to the possibility of two elements, either a bump or an excess of material, or a ring with levers.

Are either of these structures set forth in the variable diameter seal drawing as shown here?

A. The ring with levers is set forth there.

Q. Is there any excess material shown on that drawing as well?

A. Yes, there is.

Q. And where is that excess material shown relative to the levers?

A. It's just outboard of the—if you take the bottom of the seal and you go up one piece of the diagram and you go outboard, you see the bump there.

The fact that Applied Medical did not contest this point with testimony from one of its own experts no more resolves the factual question in Surgical's favor, *see, e.g., Rohm & Haas Co. v. Brotech Corp.,* 127 F.3d 1089, 1092, 44 USPQ2d 1459, 1462 (Fed.Cir.1997) (affirming district court's finding of infringement despite unrebutted expert testimony to the contrary because "[n]othing in the rules or in our jurisprudence requires the fact finder to credit the unsupported assertions of an expert witness"), than it satisfies the legal standard requiring judgment as a matter of law. The proper question we must ask, as did the district court, is whether the jury had substantial evidence upon which to conclude that Surgical failed to prove by clear and convincing evidence that the SureSeal trocar discloses each and every element and thus anticipates the '553 patent. The trial court determined that it did.

> Luther did testify that each and every element of the '553 [patent] was disclosed in the Sure–Seal materials, but it is possible, given the trial as it proceeded, that the jury could have concluded that this testimony was not credible.
>
> When he was asked why the Sure–Seal drawing satisfied Element 5 of the '553 Patent's means plus function claims, he said it depicts levers, seal and that sort of thing.[3]
>
> That's not the kind of overwhelming evidence needed. So, in the Court's view there is and there was some evidence to the contrary, and I the [sic] think that the jury could have concluded that Surgical didn't met [sic] its heavy burden of showing invalidity.

For the same reason delicately articulated by the district court in its oral ruling, we see no reason to hold otherwise. *See, e.g., Orthokinetics, Inc. v. Safety Travel Chairs, Inc.,* 806 F.2d 1565, 1570, 1 USPQ2d 1081, 1084 (Fed. Cir.1986) ("[A] jury or a court may reach a conclusion that a patent remains valid solely on the failure of the patent challenger's evidence to convincingly establish the contrary."). We acknowledge the various reasons found throughout the record for why

Luther's testimony may not be credible, but any credibility determination is not ours to remake. In sum, we cannot say that the jury lacked substantial evidence upon which to conclude that Surgical failed to prove by clear and convincing evidence that claims 4 and 18 of the '553 patent were anticipated by Applied Medical's own SureSeal trocar.

 As for anticipation by the EndoPort 5 millimeter trocar, Surgical's witnesses, Luther and Murphy, testified that the EndoPort trocar possessed a bellows structure that permitted off-axis insertion of an instrument through the trocar and permitted the seal to float—both elements being required by claims 4 and 18 of the '553 patent. Luther and Murphy explained that the EndoPort trocar had bellows that permitted off-axis insertion of the instrument and floating of the seal, as well as ribs on these bellows, which were designed to prevent the seal from inverting when the instrument was removed. Surgical also had Murphy demonstrate floating movement of the seal and off-axis manipulation using the EndoPort trocar and a balloon. Finally, Surgical presented evidence that at one point the manufacturer of the EndoPort trocar referred to a portion of its seal as "bellows."

Applied Medical countered this evidence with testimony from Feinberg, who stated that while the EndoPort trocar's seal could move, the ribs—incorporated to prevent inversion of the seal—prevented the bellows from floating and from being manipulated off-axis without creating a "cat's eye" through which insufflation gas would leak. Applied Medical further supported this testimony with portions of Murphy's testimony, and with the fact that Murphy's demonstrative balloon deflated significantly during manipulation intended to simulate off-axis and floating movements.

The fact that the EndoPort trocar can be moved, off-axis, did not require the district court to grant Surgical's motion for judgment as a matter of law on its anticipation defense. While the experts may use the same words,

---

3. By contrast, claim 18 of the '553 patent claims: "means disposed circumferentially outwardly of the valve portions for supporting the valve portions within the seal housing, the supporting means being movable relative to the housing to permit the valve portions to float relative to the axis of the cannula."

**1380**

such as "floating" and "bellows," to describe both the '553 patent and the EndoPort's seal, it is apparent that they are being used in different ways to connote different intended functions. The EndoPort trocar cannot anticipate the '553 patent simply by possessing identically named parts, unless these parts also have the same structure or otherwise satisfy the claim limitations, and were understood to function in the same way by one skilled in the art. *Cf. Intellicall, Inc., v. Phonometrics, Inc.,* 952 F.2d 1384, 1388, 21 USPQ2d 1383, 1386 (Fed.Cir.1992) (An inventor may "be his own lexicographer and ... give terms uncommon meanings."). It was within the province of the jury to make such findings, and given the testimony and its credibility determinations we cannot say the jury did not have substantial evidence upon which to conclude that Surgical did not prove by clear and convincing evidence that the EndoPort trocar anticipated the asserted claims of the '553 patent.

*Infringement*

■■■ We review evidentiary rulings of the district court for abuse of discretion, and interfere with its judgment only if an erroneous ruling prejudiced substantial rights. *See, e.g., Kolmes v. World Fibers Corp.,* 107 F.3d 1534, 1542, 41 USPQ2d 1829, 1834 (Fed. Cir.1997). Surgical argues that the trial court abused its discretion by excluding the opinion of an administrative patent judge, *Ritchart v. Green,* Interference No. 103,459 (March 21, 1996), resolving an interference proceeding between U.S. Patent Appl'n No. 08/185,102 (Green application) and the '737 patent, and that by excluding this opinion the district court prejudiced Surgical's substantial rights.

The administrative patent judge's order said that while the Green application's "thin and flexible 'fingers' may assist in enlarging the orifice by *distributing* the expansive force and spreading it throughout the membrane material when an instrument contacts the fingers, [the '737 patent's] rigid levers *concentrate* and *focus* the enlarging force in the lateral direction and with a mechanical advantage not obtainable with Green's soft and flexible 'fingers.'" Thus, it reasoned: "Given either structure or configuration as prior art, the other would not have been obvious to one with ordinary skill in the art." Surgical argued that the accused Versaport trocar is very similar to the Green patent and thus sought to introduce this opinion as part of the '737 patent's file wrapper used by its technical expert, Luther, to arrive at his opinion that there are more than insubstantial differences between the '737 patent and Surgical's Versaport trocar.

The district court sustained Applied Medical's objection to the introduction of the administrative patent judge's opinion because:

> This is an issue of fact, on whether something is insubstantial. The ... ALJ's opinion will really preempt that from the jury's determination.
>
> This expert is ... a technical expert. He can give an opinion as to what is insubstantial, and he would no more be able to rely on that than he would be if some judge in the Southern District of New York had said it, or somewhere else.
>
> \* \* \*
>
> Nothing I have said prevents you [Surgical] from eliciting from this expert [Luther] that he believes that there is an insubstantial difference, and why—and if those reasons are the same reasons that the ALJ gave, there is nothing to prevent him from saying that.
>
> \* \* \*
>
> What I am precluding is him saying, "And by the way, there is a[sic] administrative law judge in the course of this interference who agrees with me."

This narrow exclusion prevented Surgical from augmenting the credibility of its expert's testimony by aligning it with the administrative patent judge's factual finding. Such alignment could conflate factual inquiries—the administrative patent judge's finding and a finding on the substantiality of differences between the '737 patent and the Versaport trocar—in a way that might prejudice or overshadow the latter, more directly relevant finding. By permitting Surgical to present through expert testimony the same arguments it made during the interference, the trial court's decision left the administrative patent judge's factual inquiry to the province of the jury. This also left the jury,

unfettered by possible bias and untimely distractions, to address the essential factual inquiry of whether the '737 patent claims read on the Versaport trocar, as well as the tangential question of whether the Green application claims read on Surgical's Versaport trocar.

For these reasons, we cannot say that the trial court's exclusion of evidence that may be more prejudicial than probative was an abuse of its discretion. Nor can we say that Surgical's substantial rights were prejudiced by want of whatever support the administrative patent judge's opinion would contribute to Luther's testimony. Luther's credibility as an expert and the probative quality of his testimony come from his experience, presentation, and reasoning, and not those of the administrative patent judge. There also is no evidence that this evidentiary ruling adversely affected the trial court's post-verdict enhancement of damages.

 Finally, Surgical argues that the district court erred in excluding certain testimony from Luther about the scope of means-plus-function equivalents that the jury could consider in a direct infringement analysis. For example, in response to the question "And why did you find [the Green, Yoon, and Honkanen patents] helpful to your analysis on the question of equivalents?," Luther testified, "Well, if it's in the prior art, anything in the prior art, it's not available as an equivalent for purposes of considering infringement." This evidentiary ruling was not an abuse of the trial court's discretion, not only because Luther was being asked to testify beyond the scope of his expertise as a technical witness, but also because Luther's response to Surgical's questions can be relevant only under an erroneous construction of the law. *See, e.g., Intel Corp. v. United States Int'l Trade Comm.*, 946 F.2d 821, 842, 20 USPQ2d 1161, 1179 (Fed.Cir.1991) ("It is not necessary to consider the prior art in applying section 112, paragraph 6. Even if the prior art discloses the same or an equivalent structure, the claim will not be limited in scope thereby. It is only necessary to determine what is an equivalent to the structure disclosed in the specification which is performing the function at issue.").

## Conclusion

Accordingly, the judgment of the United States District Court for the Eastern District of Virginia is affirmed.

AFFIRMED.