MAYER, Chief Judge,
dissenting.
Based on the evidence and keeping in mind the proper role of an appellate court, I would affirm the district court’s decision to maintain the status quo pending a resolution of Medpointe’s allegation of infringement. There are three major flaws in this court’s opinion. First, the court overturns the district court’s finding that ammonium chloride is an active ingredient in the Candettes formulation. The court bases this determination on a single statement by Hi-Tech’s expert witness James O’Donnell: “Ammonium Chloride, however, is an inactive ingredient.” The court apparently believes that this evidence is particularly weighty because Medpointe failed to rebut it with expert testimony. O’Donnell’s testimony, however, is conclusory and unsupported. Further, the district court also considered the Candettes reference, which itself provides compelling evidence that ammonium chloride is an active ingredient. The reference lists only four ingredients: carbetapentane citrate, pyrilamine maléate, phenylephrine hydrochloride and ammonium chloride. The precise amount of ammonium chloride is specified in a manner similar to that of the other three ingredients. And, the Candettes reference conspicuously fails to list any of the inactive ingredients that are required for a preparation of this type. If ammonium chloride is an inactive ingredient, why does the Candettes reference list it but fail to list any others? The district court, which has special expertise in making credibility determinations, was entitled to disregard O’Donnell’s testimony, especially in light of the Candettes reference. See Rohm and Haas Co. v. Brotech Corp., 127 F.3d 1089, 1092 (Fed.Cir.1997) (“Nothing in the rules or in our jurisprudence requires the fact finder to credit the unsupported assertions of an expert witness.”); see also Libas, Ltd. v. United States, 193 F.3d 1361, 1366 (Fed.Cir.1999) (“It would make little sense to say that a trial court in its fact-finding-role should accord much if any weight to expert testimony, the reliability of which is not established.”). Consequently, this court’s decision that ammonium chloride is an inactive ingredient required the reversal of a credibility determination in addition to a reweighing of the evidence. Such *82 a foray into the virtually exclusive province of the district court has been regularly and consistently criticized by both the Supreme Court and this court. See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 122 n. 18, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969) (“Rule 52(a) admonishes due regard for the trial court’s opportunity to assess the credibility of witnesses.”); Applied Med. Res. Corp. v. United States Surgical Corp., 147 F.3d 1374, 1379 (Fed.Cir.1998).
The court then disputes the district court’s determination that tannates are difficult to work with. In so doing, it takes issue with the district court’s failure to properly weigh the evidence. This court apparently feels that because tannates are both “well-known to ordinarily skilled practitioners” and long-lasting, ante, at 80, the district court could not have found that tannates are difficult to work with. The district court, however, was also presented with evidence in the testimony of Dr. D’Addio that the volume of tannates in the ’206 formulation exceeded any other previous preparation and that such a high concentration presented increased difficulty. Presented with this testimony, which the district court obviously credited, it is hard to see how this court was “left with the definite and firm conviction that a mistake has been committed.” United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).
Finally, this court found that the “commercial success [of Tussi-12D] is somewhat tenuous given that Medpointe’s product has so far only broken even,” and that the evidence of copying is weak. Ante, at 81-82. I have been unable to find any case that suggests that a product was commercially unsuccessful because it had only broken even at the time of inquiry. Tussi12D has been on the market since 2002, barely enough time to have recouped the investment in R & D that was necessary for its development. At the time the district court’s opinion was written, Medpointe had already sold in excess of $14 million worth of Tussi-12D. Further, no fewer than four companies are poised to flood the market with generic formulations of the ’206 patent. Based on this evidence, it is hard to imagine that Tussi-12D has not been greeted favorably by consumers. Because I cannot join in the court’s de novo review of the district court’s findings of fact, I respectfully dissent.